# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| PHILIP LOWRANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CV418-089 |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

FILED
Scott L. Poff, Clerk
United States District Court

By EKerr at 9:37 am, Jan 28, 2019

## REPORT AND RECOMMENDATION

Plaintiff Philip Lowrance seeks judicial review of the Social Security Administration's denial of his application for Supplemental Security Income (SSI) benefits.

## I.  GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.,* 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ applies

> . . . a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC[1] to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age, education, and work experience. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a [Vocational Expert (VE)].

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir.

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

2015) (footnote added).

## II.   ANALYSIS

Lowrance, who was 29 years old when his disability application was denied, alleges disability beginning September 28, 2013.  Tr. 13, 166.  He graduated from high school and has past work experience as an electrician helper.  Tr. 23, 190-92, 237.  After a hearing, the ALJ issued an unfavorable decision.  Tr. 13-24.  He found that Lowrance's bipolar disorder, depression, anxiety, post-traumatic stress disorder (PTSD), neurodevelopmental disorder, and cannabis use disorder constituted severe impairments but did not meet or medically equal a Listing.  Tr. 15-19.  Based on the evidence of record, the ALJ found that he retained the RFC for the full range of work at all exertional levels except that Lowrance

> can only do unskilled, routine, repetitive tasks and instructions; can have no more than occasional interaction with coworkers, supervisors, or the public; can face no more than occasional changes in the workplace environment and routine; and cannot perform assembly line, fast paced, high production, quota type work.

Tr. 19.

Plaintiff, he determined, was incapable of performing his past relevant work but could perform the requirements of representative work

as a marker, cleaner, and press operator, all light work with an SVP[2] of 2. Tr. 24. Lowrance disagrees, arguing that the ALJ erred in in his evaluation of plaintiff's periods of decompensation and Listings 12.04 and 12.11. Docs. 9 & 12.

### A.   Plaintiff's Mental Limitations

At Step 2, the ALJ found plaintiff was moderately limited in his abilities to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; and to adapt or manage himself. Tr. 16-18. He found, however, that plaintiff had "only two substantial instances of manic episodes, in December 2016 and October 2017," which was insufficient to "establish episodes of a sustained and recurrent nature sufficient to justify meeting listings 12.04 and 12.11." Tr. 18. Indeed, when "stabilized" with medication, plaintiff has "no more than moderate limitations" in all areas. Tr. 16-18, 20-21.

To meet listing 12.04 for bipolar disorder, a plaintiff must have (A) a qualifying diagnosis and either (B) extreme or marked limitation of two mental functioning categories or (C) (1) two years' history of a "serious

---

[2]   Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.  DOT, App. C.

4

and persistent" mental disorder and (2) both treatment, therapy, or a highly structured setting and marginal adjustment. *See* 20 C.F.R., Part 404, Subpt. P, App. 1, §§ 12.04B & C. Plaintiff argues that he meets the paragraph B criteria because he has "begun to have episodes of decompensation" sufficient to meet Listing 12.04. Doc. 9 at 7. He does not identify those episodes, however, and instead refers generally to "episodes of decompensation as confirmed by the psychiatric records . . . which limit [his abilities in] memory, interaction, staying on task, and adapting" and to his "testimony [that] shows additional instances of decompensation when he is unable to interact at all with others, whether supervisors or just the people who happen to be around him." Doc. 9 at 7. The two episodes referenced by the ALJ, however, both resulted from noncompliance with medication and treatment. When compliant, he stabilized. *See* tr. 223-29, 289, 295, 709-57. Plaintiff does not point with specificity to any other episodes of decompensation that would demonstrate otherwise. *See* doc. 9 at 7. And, as ever, a plaintiff "waive[s] all challenges to the ALJ's decision except the one[s] briefed." *Jones ex rel. Martensen v. Colvin*, 2015 WL 4770059 at * 3 n. 3 (S.D. Ga. Aug. 12, 2015) (citing *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App's 855,

856 n. 1 (11th Cir. 2013)).  Thus this Court will not, on its own, hunt down any such episodes.  *See, e.g. United States v. Dunkel*, 927 F.3d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Plaintiff argues that he meets paragraph C criteria in a similarly conclusory fashion, stating that "[h]is bipolar behavior and limits have been present for many years" and that without treatment, "he begins to have periodic episodes of manic decompensation that land him back in treatment, or jail."  Doc. 9 at 8.  Without specific citations to the record, of course, the Court can only speculate what he refers to in this argument. After all, the ALJ noted that compliance with treatment dramatically improved plaintiff's emotional and behavior issues and that, generally, plaintiff did not have deficits in his activities of daily living.  Tr. 17-18. His family does not help monitor his daily activities and he has not participated in special or vocational training or work programs, 24/7 mental health service in a group home or transitional housing, lived in a hospital with 24/7 care, or received assistance from a crisis response team, social workers, or community mental health workers.  Tr. 18.  Plaintiff points to nothing in the record even hinting that the ALJ's review of the

record was incomplete, aside from his own conclusion that it was. He does not even hint at how the ALJ's determination that there was no evidence of marginal adjustment in the record is wrong. *See* tr. 18 (noting plaintiff's activities of daily living, dearth of manic episodes, and improved function with medication). Plaintiff does not point to anything in the record to contradict the ALJ's conclusion that he "is able to function outside of his home or a more restrictive setting without substantial psychosocial supports." *Id*. The Court will not do the work for him. *Jones*, 2015 WL 4770059 at * 3 n. 3; *Dunkel*, 927 F.3d at 956.[3]

---

[3]   The closest plaintiff comes to mounting an argument is a citation to an out-of-district case noting that courts "do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n. 24 (9th Cir. 2014), cited, *inter alia*, in *Conway v. Colvin*, 2015 WL 5772056 at * 5. Plaintiff contends that the ALJ was required to evaluate the contribution of his bipolar disorder to his medication noncompliance. The cases he cites, however, relate to *credibility findings*. *Conway*, 2015 WL 5772056 at * 5 (citing *Garrison*, 759 F.3d at 1018; *Jelinek v. Astrue*, 662 F.3d 805, 814 (7th Cir. 2011) ("bipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment" and thus "ALJs assessing claimants with bipolar disorder must consider possible alternative explanations before concluding that non-compliance with medication supports an adverse *credibility* inference") (italics added)). Plaintiff, in other words, erroneously conflates the standards for evaluating his credibility with the paragraphs B and C criteria.

Had he hunted further, plaintiff would have found that the "inherently cyclical nature of bipolar disorder" has been evaluated in the context of paragraph C. *Sunwall v. Colvin*, 158 F. Supp. 3d 1077, 1081-82 (D. Or. 2016). The regulations themselves provide that "[p]roper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D(2). But here the ALJ *did* evaluate years of records, and found only two instances where plaintiff went off his

### B. Plaintiff's Absenteeism

The ALJ found plaintiff could work despite the restrictions imposed by his medically determined impairments, based on the testimony of a vocational expert that a hypothetical individual with the same assessed residual functional capacity could work. Tr. 24, 54-55. Plaintiff argues, without citation to the record, that because he "has periodic episodes of decompensation during manic phases of his illness[ ] and has developed symptoms of paranoid schizophrenia" he would miss too many days of work to "consistently maintain employment." Doc. 9 at 10. Indeed, his

---

medications and decompensated to the point he required in-patient treatment. Two outlier episodes "do[ ] not establish episodes of a sustained and recurrent nature sufficient to justify meeting listings 12.04 and 12.11." Tr. 18. The ALJ did not "cherry pick" a few episodes out of many to minimize the cyclical nature of plaintiff's disabling mental impairment: there are *only* two manic episodes in the record. *C.f. Sunwall*, 158 F. Supp. 3d at 1081-82.

Plaintiff does not point to other episodes in the record or his own testimony establishing that his bipolar disorder causes more disruption than that which the ALJ evaluated. *See* docs. 9 & 12. He refers only to his arrests, which were *not* caused by his bipolar symptoms. Doc. 9 at 8; *see* tr. 36-37 (testifying that he was jailed for driving without a license and under the influence of marijuana). Indeed, his last gainful employment ended because of his arrest, *not* his manic symptoms. *Id*. (testifying that he lost his electrician's assistant job because he got arrested); *see also id*. at 43-45 (testifying that due to his PTSD symptoms — *not* his bipolar symptoms — were the job reopened, he would feel paranoid working it because he "ha[s] a thing about people being behind [him]" and the job entailed having a supervisor/mentor stand over his shoulder). Aside from that, he has worked under the table on short-term home improvement jobs, all of which have ended due to the temporary nature of the work, *not* his mania. *Id*. at 38-39. Plaintiff has simply not mustered any showing that his bipolar disorder is so cyclically disruptive that he is unable to work, *or* that the ALJ failed to consider such evidence in his decision.

only evidentiary support is his own counsel's question to the VE modifying the ALJ's hypothetical. *Id*. (citing Tr. 56-57 (asking whether "be[ing] hospitalized once every three to six months for about two weeks for mental problems" would preclude gainful employment)); *see also* doc. 12 (noting only that his psychiatric disorder contributes to his medication noncompliance). What evidence of record supports such a limitation is left for the Court to suss out for itself, apparently. That the Court will not do, *Jones*, 2015 WL 4770059 at * 3 n. 3; *Dunkel*, 927 F.3d at 956, particularly in light of a record that supports the ALJ's determination that plaintiff has only experienced two episodes of decompensation and those only when noncompliant with his medications. *See* tr. 16-24, 288-95, 709-57.

## III. CONCLUSION

Because plaintiff has failed to demonstrate that the ALJ's decision is unsupported by substantial evidence in the record, the Commissioner's final decision should be **AFFIRMED**.

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Given the lapse in government

appropriations, this matter has been stayed by the district judge. Doc. 13. Therefore, within 14 days of the lifting of the administrative stay in this case, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __25th__ day of January, 2019.

*/s/ Christopher L. Ray*
_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA